***********
Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction of the parties and of the subject matter pursuant to the North Carolina Workers Compensation Act.
2. All parties have been correctly designated and there is no question as to misjoinder or non joinder of parties.
3. All parties are subject to and bound by the provisions of the Act.
4. An employee-employer relationship existed between plaintiff-employee and defendant-employer on 4 March 1999.
5. Plaintiffs average weekly wage was $522.73 at the time of injury.
6. Plaintiff alleges that he was injured on 4 March 1999, and that he has been out of work since 6 March 1999 as a result of said injury.
7. Defendant is self-insured.
8. The medical records of plaintiffs treatment were stipulated to be admissible if they were relevant and material.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a fifty-three year old male high school graduate. Plaintiff previously suffered a back injury in July 1994. Prior to working for defendant-employer, plaintiff was employed as a truck driver.
2. Plaintiff worked for defendant-employer for approximately six years prior to the incident of 4 March 1999. He was a Senior Utility Worker and earned $12.30 per hour. Plaintiff worked an average of forty hours per week.
3. On 4 March 1999, plaintiff was tamping dirt in a ditch in Fayetteville, North Carolina. As plaintiff was tamping dirt, he was struck in the back by the bucket of a backhoe. Plaintiff notified his supervisor on the day of the accident. An independent witness, Mr. Jack Harrow, described the impact as a "hard slap on the back.
4. The next day after the incident, plaintiff attended a previously scheduled appointment with Richard D. Serano, M.D., at Highland Neurology Center. Dr. Seranos observation was "massive spasm of the paraspinal muscles in the mid back area as well as the serratus posterior. Dr. Seranos assessment was that plaintiff had a severe re-injury. Dr. Serano prescribed Valium and Percocet and instructed plaintiff to rest for three days and to ice his back.
5. On 10 March 1999, plaintiff attended an appointment with the Occupational Health Nurse for defendant, who noted that plaintiff was hit in back by bucket on truck last week. The nurse gave plaintiff a Status Change Report which stated that he was unable to perform his normal duties while taking the prescriptions within a twenty-four hour period before work or during work.
6. On 12 March 1999, plaintiff was examined by Otto Rogers, M.D. Upon examination, Dr. Rogers found that each of plaintiffs spinous processes was tender to palpation from C-spine to T-spine to L-spine. Plaintiff was assessed with back pain. Dr. Rogers did not find evidence of significant recent trauma, but noted that his examination was a week after plaintiffs incident at work. Dr. Rogers ordered x-rays of the T-spine and L-spine to rule out fracture, and he planned to speak with Dr. Serano. Dr. Rogers continued plaintiffs out of work status due to the side effects of the medication that he was taking.
7. Plaintiff had another appointment with Dr. Serano on 19 March 1999. Dr. Serano did not think that plaintiff was faking his symptoms. Plaintiff had an acute deterioration of his spondylolisthesis with increased muscle spasm, which was consistent with the accident that plaintiff described, even though there were no obvious bruises and no changes on the x-rays. Plaintiffs condition was similar to that of a person with spondylolisthesis whose condition deteriorated after a minor rear-end collision. The acute muscle spasm causes slippage in the lumbosacral region, and Dr. Serano could also feel the spasms in plaintiffs back. He recommended that plaintiff remain out of work from 8 March 1999 to 24 March 1999.
8. On 23 March 1999, plaintiff was again examined by Dr. Rogers, who found that he suffered from continued pain with drowsiness from medications. Dr. Rogers indicated that he would contact Dr. Serano regarding when plaintiff could stop taking the medications that caused drowsiness.
9. On 7 April 1999, plaintiff sought treatment from his family doctor, Julia Norem-Coker, M.D. Plaintiff reported severe pain in the middle of his back, which was radiating down into his leg. Plaintiff informed Dr. Norem-Coker that Dr. Rogers had stated his back condition was a chronic problem that was not work related. Dr. Norem-Coker disagreed with Dr. Rogers assessment of plaintiffs condition. Dr. Norem-Cokers diagnosis was low back pain acute/chronic problem secondary to injury. Dr. Norem-Coker continued plaintiff on the medications and to remain out of work.
10. From 24 March 1999 through 3 May 1999, plaintiff attended physical therapy to increase his range of motion, reduce his pain, and to render him able to return to work full duty. Plaintiff attended physical therapy for sixteen visits with little relief.
11. On 19 July 1999, an EMG Nerve Conduction study was performed by Cape Fear Neurology Associates. The impression of this study was suggestive of mild lower lumbar radiculopathy and neuropathic changes in a diffuse manner. The nerve conduction study revealed mild slowing in a diffuse manner in both the peroneal and tibial aspects bilaterally. Plaintiff was transferred to Dr. Shupeck at Pinehurst Surgical Clinic, because his doctor at Cape Fear Neurology was in the process of relocating out of state.
12. From 30 September 1999 through 10 January 2000, plaintiff attended several appointments with Dr. Shupeck at Pinehurst Surgical Clinic. Dr. Shupeck reviewed an MRI scan, which showed L5-S1 spondylolisthesis. Dr. Shupeck also indicated that plaintiff had radicular leg and back pain. Dr. Shupeck initially gave plaintiff options of physical therapy, epidural steroid injections, or surgery. Plaintiff expressed a desire to undergo the epidural steroid injections, but was unable to obtain them due to insurance difficulties. The surgical option that Dr. Shupeck suggested included decompression and fusion. Plaintiff and Dr. Shupeck agreed that they would both prefer non-surgical intervention.
13. On 4 March 1999, plaintiff sustained a specific traumatic incident arising out of and in the course of his employment when he was struck in the back by the bucket of a backhoe.
14. As of the date of the hearing before the Deputy Commissioner, plaintiff was still unable to work due to the consistent pain in his back and leg, and the side effects of the medications that he is currently taking.
15. Plaintiffs average weekly wage at the time of his injury was $522.73, yielding a weekly compensation rate of $348.50.
16. All medical reports submitted by plaintiff are relevant and material to this case.
17. Plaintiff had not reached maximum medical improvement as of the date of the hearing before the Deputy Commissioner and remained unable to earn wages with defendant or in any other employment.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 4 March 1999, plaintiff sustained a compensable injury as a result of a specific traumatic incident arising out of and in the course of his employment with defendant.
2. Plaintiff is entitled to compensation benefits at the rate of $348.50 per week beginning 8 March 1999 and continuing until plaintiff returns to work or until further order of the Commission. G.S. 97-2(6), G.S. 97-29.
3. Plaintiff is entitled to have defendant pay for all medical expenses incurred or to be incurred as a result of his injury by accident, so long as such evaluations, examinations, and treatments are reasonably required to effect a cure, give relief, or lessen plaintiffs period of disability. G.S. 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorneys fee herein approved, defendant shall pay plaintiff total disability compensation benefits at the rate of $348.50 per week from 8 March 1999 and continuing until plaintiff returns to work or until further order of the Commission. Compensation due, which has accrued, shall be paid to plaintiff in a lump sum, subject to the attorneys fee hereinafter provided in this Award.
2. Defendant shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury by accident of 4 March 1999 for so long as such evaluations, treatments, and examinations are reasonably required to effect a cure, give relief, or tends to lessen plaintiffs period of disability.
3. A reasonable attorneys fee in the amount of twenty-five percent of the compensation approved and awarded for plaintiff is approved for plaintiffs counsel. Twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiffs counsel. Thereafter, plaintiffs counsel shall receive every fourth compensation check.
4. Defendant shall pay the costs of this action.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
RCR:db